1       **UNITED STATES DISTRICT COURT**

2       **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3       **HONORABLE GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE**

4

5    **UNITED STATES OF AMERICA,**            )
                                              )
6                     **PLAINTIFF,**          ) CASE NO.
                                              ) **2:07-cr-01221-GHK**
7           **VS.**                           )
                                              )
8    **STANLEY DAN RECZKO III,**              )
                                              )
9                     **DEFENDANT.**          )
     _____)

10

11

12

13

14                  **REPORTER'S TRANSCRIPT OF**
                     **COURT TRIAL - DAY 1**
15                  **FRIDAY, MARCH 6, 2015**
                         **10:12 A.M.**
16              **LOS ANGELES, CALIFORNIA**

17

18

19

20

21

22       _____

23          **KHOWOONSUN CHONG, CSR 12907, CRR, RMR**
            F E D E R A L   O F F I C I A L   C O U R T   R E P O R T E R
24          2 5 5   E A S T   T E M P L E   S T R E E T ,   R O O M   1 8 1 - G
            L O S   A N G E L E S ,   C A L I F O R N I A   9 0 0 1 2
25                  k c h o n g 1 2 9 0 7 @ y a h o o . c o m

1          **APPEARANCES OF COUNSEL:**

2

3     **FOR THE PLAINTIFF:**

4          STEPHANIE YONEKURA
           UNITED STATES ATTORNEY
5          BY:   JOEY L. BLANCH
                 VANESSA BAEHR-JONES
6          Assistants United States Attorney
           United States Courthouse
7          312 North Spring Street
           Los Angeles, California 90012

8

9     **FOR THE DEFENDANT:**

10         DAVID J.P. KALOYANIDES LAW OFFICES
           BY:  DAVID KALOYANIDES
11         Attorney At Law
           15538 Central Avenue
12         Chino, California 91710

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1                          **I N D E X**

2                      **Friday, March 6, 2015**

3         --------------------------------------------------------

4                  **CHRONOLOGICAL INDEX OF WITNESSES**

5

6     WITNESSES                                              PAGE

7     PETER MIRANDA, called by the Government
             DIRECT EXAMINATION BY MS. BAEHR-JONES          13
8            CROSS-EXAMINATION BY MR. KALOYANIDES            21

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   **<u>INDEX OF EXHIBITS</u>**

2   <u>MARKED FOR IDENTIFICATION</u>

3   (NONE)

4

5

6   <u>RECEIVED INTO EVIDENCE</u>

7

8

EXHIBITS                                                    PAGE
9    102 through 104, 108, 109, 111, 113, 116, 117,           7
     119, 120, 121, and 122
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              **LOS ANGELES, CALIFORNIA; FRIDAY, MARCH 6, 2015**

2                              **10:12 A.M.**

3                              -oOo-

4

5              THE CLERK:  Please remain seated and come to order.

6    This United States District Court is now in session, the

7    Honorable George H. King, Chief Judge presiding.

8         Calling Item No. 1 on the Court's calendar, criminal

9    07-1221(B), United States of America versus Stanley Dan

10   Reczko III.  Counsel, would you please state your appearances

11   for the record.

12             MS. BAEHR-JONES:  Good morning, Your Honor.

13   Vanessa Baehr-Jones and Joey Blanch for the United States, and

14   with us at counsel table is case agent Meghan Madden.

15             MR. KALOYANIDES:  Good morning.  David Kaloyanides

16   with Mr. Reczko, who is present in custody.

17             THE COURT:  This matter is on the Court's calendar

18   for court trial as to Count 2 of the second superseding

19   indictment in this case.  You folks have presented to the clerk

20   a stipulation regarding admissibility of certain evidence.  I

21   take it this is all relating to this aspect of the Court trial;

22   is that right?

23             MS. BAEHR-JONES:  Yes, Your Honor.

24             MR. KALOYANIDES:  That's correct, Your Honor.

25             THE COURT:  I will receive the stipulation -- it

```
 1    appears to be signed by the parties -- and accept it as part of
 2    the evidence in this case.
 3          What else do we need to do in terms of the court trial?
 4               MS. BAEHR-JONES:  Your Honor, the Government would
 5    like to move into evidence pieces of the evidence that's
 6    included in the stipulation and then call one witness.
 7               THE COURT:  All right.
 8               MS. BAEHR-JONES:  So the Government moves into
 9    evidence Government's Exhibit 102 to 104, 108 --
10               THE COURT:  102 to?
11               MS. BAEHR-JONES:  104.
12               THE COURT:  104, 108.
13               MS. BAEHR-JONES:  109.
14               THE COURT:  109.
15               MS. BAEHR-JONES:  And 111.
16               THE COURT:  What about the rest of it?
17               MS. BAEHR-JONES:  Government also will move into
18    evidence -- seeks to move into evidence Government's
19    Exhibit 100.  Defense counsel has indicated that -- that he
20    reserves the right to object on certain grounds.
21               THE COURT:  What about with respect to 113, 116,
22    117, 120, 121, 119 -- what about those?
23               MS. BAEHR-JONES:  Yes, Your Honor.  I was just going
24    to go through them, yes.
25               THE COURT:  Oh, you're not done.
```

1          MS. BAEHR-JONES:  No, I'm not done.

2          THE COURT:  I'm sorry.  All right.  Go ahead.

3          MS. BAEHR-JONES:  So 113, 116, 117, 119, 120, 121,

4    and 122.  And then with respect to 100, I know defense counsel

5    wanted to reserve an objection.

6          THE COURT:  With respect to 102 through 104, 108,

7    109, 111, 113, 116, 117, 119, 120, 121, and 122, any objection

8    as to those, Mr. Kaloyanides?

9          MR. KALOYANIDES:  No, Your Honor.

10         THE COURT:  Those will be received.

11             (Exhibits 102 through 104, 108, 109, 111, 113,

12             116, 117, 119, 120, 121, and 122 received into

13             evidence.)

14         THE COURT:  As to 100, you are moving the admission

15    of 100.

16      Mr. Kaloyanides, you do have an objection?

17         MR. KALOYANIDES:  Yes, Your Honor.  We're not

18    objecting on the grounds of authentication, nor are we

19    objecting any hearsay.  We do agree that it is a sworn

20    statement by Mr. Reczko.  However, in light of all the other

21    exhibits, it is not relevant and it is certainly cumulative of

22    that other evidence that's already coming in.

23         THE COURT:  I don't know what 100 is; so perhaps I

24    should take a look at it, and then I can make my ruling.  What

25    does it purport to be?  It purports to be a statement signed by

1    Mr. Reczko on or about August 15 of 1996?

2              MR. KALOYANIDES:  Yes, Your Honor.

3              THE COURT:  Okay.  Let me just go ahead and quickly

4    read it.  And then, Ms. Baehr-Jones, you can tell me why it is

5    that you think it ought to be admitted.

6              MS. BAEHR-JONES:  Yes, Your Honor.

7                   (Brief pause.)

8              THE COURT:  Okay.  Ms. Baehr-Jones.

9              MS. BAEHR-JONES:  Thank you, Your Honor.  I would

10   agree with defense counsel that this would be unnecessary if

11   defendant were admitting that -- to the fact of his 1996

12   conviction that, in fact, was him.

13        But since he is not entering into that kind of

14   stipulation, the Government does believe that this is

15   additional evidence that ties this Stanley Dan Reczko III to

16   the 1996 conviction of People versus Stanley Reczko.  It

17   includes the time that these events happened, the place of the

18   offense, and most importantly it includes the circumstances

19   surrounding the offense and the name of the victim and his

20   family relationship with the victim.

21        And in Government's Exhibit 120, the Government has

22   admitted the -- the birth certificate of JLR, who is the victim

23   in the 1996 conviction.  And that birth certificate which shows

24   that Stanley Dan Reczko is, in fact, her father, biological

25   father, combined with his affidavit, demonstrates beyond any

1    doubt that this is a conviction that the defendant, in fact,

2    sustained.

3              THE COURT:  So you don't have any kind of

4    fingerprint that could be tied to that particular conviction?

5    Typically, if there's a prior conviction, there could also have

6    been fingerprint evidence arising from that conviction, and the

7    comparison would be some evidence.  You don't have that?

8              MS. BAEHR-JONES:  The Government has police files

9    that -- that -- that have -- the Government is seeking to

10   establish the conviction records that -- that are admitted as

11   Government's Exhibit 102 to 104 and et cetera.  Those don't

12   have defendant's fingerprints on them.  Those are court

13   records.

14             THE COURT:  I understand, but is there some link

15   between the court records and the police records which

16   typically would have fingerprints?

17             MS. BAEHR-JONES:  There -- there are, Your Honor.

18   The Government has not sought to -- to move into evidence the

19   police records.  We do have those in this case, but as those

20   are law enforcement records, we --

21             THE COURT:  I'm not questioning whether you should

22   or should not do it.  I'm just trying to understand what you do

23   or you do not have in evidence or can get into evidence.

24             MS. BAEHR-JONES:  May I have one moment, Your Honor.

25             THE COURT:  Sure.

1          MS. BAEHR-JONES:  If your question is whether the

2    judgment and conviction order in this case has defendant's

3    fingerprints on it --

4          THE COURT:  No, no.  That's not the question.

5          MS. BAEHR-JONES:  Oh, okay.

6          THE COURT:  When you say judgment and conviction in

7    this case, what is "this case"?

8          MS. BAEHR-JONES:  Sorry, in the 1996 conviction.

9          THE COURT:  Yes.  That was my question.

10         MS. BAEHR-JONES:  Okay.  Okay.  I apologize,

11   Your Honor.  I was confused.

12       Your Honor, the final judgment and commitment order is at

13   Government's Exhibit 109.  It does not have the defendant's

14   fingerprints on it, and that's the records we were provided

15   with by Jefferson County.

16         THE COURT:  That's fine.

17       Mr. Kaloyanides?

18         MR. KALOYANIDES:  I know the Court has not had a

19   chance to review all the other exhibits that we have stipulated

20   to, but those are the exhibits that contain information that I

21   think is sufficient for the Government to proceed to identify

22   Mr. Reczko.  They have information regarding date of birth,

23   residence.  They've got his registration here in California

24   which refers to his residence in New York, same date of birth,

25   his passport, his driver's license, his driver's license

application here in California which identifies his previous

license being in New York, the transcripts of the change of

plea hearing from the New York case, the transcripts of some

motions where Mr. Reczko makes statements.

The certified record of the conviction has his date of

birth, his fairly unique name.  There are other documents he

has signed that are in the court record.  This statement is

just not relevant because it doesn't add anything more to

connecting this individual to that conviction outside of the

documents that are the official records.

THE COURT:  The other ones that you have described,

I take it those are part of the exhibits that have already been

admitted into evidence in this court trial just a few minutes

ago.

MR. KALOYANIDES:  Yes.

THE COURT:  I obviously have not had an opportunity

to look over all of the exhibits.  My view on this is as

follows, and I'm going to reserve my ruling on that.  What I

want you to do is put on the evidence that you intend to put on

for this case, both sides.  And then what I will do is I will

continue the matter to a different date, at which date I will

hear final argument from you on that, and then I will make my

ruling as to whether or not Mr. Reczko is guilty or not guilty

of Count 2.

In the interim, then, I will have an opportunity to review

1   all of these exhibits and consider all of your other

2   testimonial evidence.  And then, of course, I'll reserve

3   judgment until I've had a chance to hear from you at closing

4   argument, and then we'll go from there, because at this point

5   this is a fairly extensive set of exhibits, and I don't think

6   it would be a good use of our time for me to sit here on the

7   bench, and you folks sitting there twiddling your thumbs as I

8   go through all of these exhibits, which I should go through

9   inasmuch as this is a court trial and you've admitted it and I

10  want to review the evidence.  Okay?

11          MS. BAEHR-JONES:  Thank you, Your Honor.

12          MR. KALOYANIDES:  Thank you, Your Honor.

13          THE COURT:  You have one witness?

14          MS. BAEHR-JONES:  Yes, Your Honor.

15          THE COURT:  You may call that witness at this time.

16          MS. BAEHR-JONES:  The Government calls Officer

17  Peter Miranda.

18          THE COURT:  All right.

19          THE CLERK:  Please come forward, wait behind our

20  court reporter, and raise your right hand to be sworn, please.

21  Do you solemnly swear the testimony you shall give in the cause

22  now pending before the Court shall be the truth, the whole

23  truth, and nothing but the truth so help you God?

24          THE WITNESS:  I do.

25          THE CLERK:  Thank you, sir.  You may go around and

```
 1    take a seat, please.  Please adjust the microphone and speak
 2    directly into it.  Would you please state your full name for
 3    the record, spell both your first and your last name, please.
 4              THE WITNESS:  Last name is Miranda, M-i-r-a-n-d-a.
 5    First name of Peter, P-e-t-e-r.
 6              THE COURT:  Ms. Baehr-Jones.
 7              MS. BAEHR-JONES:  Thank you, Your Honor.
 8                          PETER MIRANDA,
 9    called as a witness by the Government, was sworn and testified
10    as follows:
11                        DIRECT EXAMINATION
12    BY MS. BAEHR-JONES:
13    Q    Good morning, Officer Miranda.
14    A    Good morning.
15    Q    Officer Miranda, what is your occupation?
16    A    I'm a -- currently a Detective II, assigned to
17    robbery-homicide division, for the City of Los Angeles.
18    Q    And how long have you been a Los Angeles Police officer?
19    A    Approximately 16 years.
20    Q    And from August of 2005 to around October of 2006, where
21    were you stationed or employed?  What office as part of the
22    Los Angeles Police Department?
23    A    I was assigned to Rampart area detectives.
24    Q    What were some of your responsibilities in the Rampart
25    area?
```

UNITED STATES DISTRICT COURT

1   A     During my time at Rampart, I was assigned both patrol as

2   an officer, as a gang officer, and then later as a detective

3   trainee, which I held assignments from homicide to robbery to

4   sexual assaults.

5   Q     And was one of your responsibilities registering sex

6   offenders?

7   A     It was.

8   Q     Do you remember registering someone named Stanley Dan

9   Reczko III?

10  A     I do.

11  Q     And how do you remember him?

12  A     Well, he came in to the division, and prior to his

13  arrival, I actually received a call from an outside agency.  I

14  believe it was from somewhere upstate New York, advising me

15  that he would be moving into our area.

16  Q     And what are the -- did any other -- did the person tell

17  you any other information about the defendant?

18  A     He did.  I recall him telling me that he was arrested, and

19  his conviction was sexual assault.  And I believe it was on his

20  daughter, pertaining to his daughter.

21  Q     Do you see that person, Stanley Dan Reczko III, in the

22  courtroom today?

23  A     I do.

24  Q     Can you identify where in the courtroom he's sitting and

25  an article of clothing he's wearing.

```
 1   A    He's seated to my left, and he's wearing white, a white
 2   jumpsuit with a light gray shirt.
 3              MS. BAEHR-JONES:  May the record reflect,
 4   Your Honor, that the witness has identified the defendant.
 5              THE COURT:  Yes, it may.
 6              MS. BAEHR-JONES:  Thank you, Your Honor.
 7   Q    BY MS. BAEHR-JONES:  Can I ask you to turn in the binder
 8   that should -- actually, I'll ask Ms. Herrera.
 9              Will you please hand the witness the binder.
10              If you can turn to Government's Exhibit 119, it should be
11   in the back.  If you can just take it out of the plastic thing
12   it's in, great.  And looking at the -- what's in the binder as
13   page 10 of exhibit -- Government's Exhibit 119, which should be
14   in the back, and it's -- it's -- has the date of August 1st,
15   2005, on it.  Can you turn to that page.  It should be
16   second-to-last for you but --
17              THE COURT:  What's the date?
18              MS. BAEHR-JONES:  It is the August 1st, 2005, and
19   it's fourth from the end.
20   Q    BY MS. BAEHR-JONES:  Do you recognize that?
21   A    I do.
22   Q    And what does that represent?
23   A    This is a State of California registered form, and the
24   form number for this is the DOJ form.  It's real blurry here.
25   88-81028, I believe.  It's kind of -- the photocopy here is --
```

1   but it's a sexual registration form that we'd fill out when a

2   sexual registrant, a person who's been convicted of 290, has

3   either moved into the area or was updating his registration or

4   his registration status.

5   Q    How does that work when someone registers with -- with

6   you, with the -- with an officer?

7   A    Well, specific to this form, this form dated August 1st,

8   2005, if you look at the top of this form, there's four

9   sections to it.  One will say type, and offender has moved in,

10  and then the other one has other subheadings.

11       This one was into my jurisdiction, meaning that he's

12  moving into the Rampart area.  So he was registering as a new

13  registrant within our division.

14  Q    And are these forms filled out in person, or are they

15  mailed in?

16  A    These forms are filled out in person.

17  Q    And looking at the handwriting that's in the form, do you

18  recognize that handwriting?

19  A    I -- as far as on --

20  Q    Sorry.  Let me be more specific.

21       So looking at where it says name of agency, registering

22  agency, and registering officer's name, and title number, do

23  you recognize the handwriting on those lines?

24  A    I do.

25  Q    And whose handwriting is that?

1    A      That is mine.

2    Q      And whose name is listed as the registering officer?

3    A      That would be myself, Miranda.

4    Q      Okay.  And then looking at the bottom of the page, can you

5    read the signature?  Who -- who assigned [sic] this form?

6    A      The form would -- would apply to Stanley Reczko, middle

7    name of Dan.

8    Q      Okay.  And at the time that a person registers, do they

9    also have to give a fingerprint?

10   A      They do.

11   Q      And did the defendant give a fingerprint when he filled

12   out this form?

13   A      He does -- he did.

14   Q      And then looking at the full name of registrant, I

15   apologize.  Looking at the date of birth, can you read the date

16   of birth that's listed there.

17   A      October 20th, 1964.  It says 10/20/64.

18   Q      And then looking at the next sheet of this form -- and it

19   should be two pages later in the books, the witness books, the

20   exhibit books, but it's the next page for you -- what are the

21   initials -- what are the relevant -- when you look at the

22   initials that line this page, what are the relevant

23   acknowledgments the defendant made when he signed and initialed

24   this form?

25   A      Well, these -- if we're referring to the second page --

1    Q     Yes.

2    A     -- of the first form here, it's the registration

3    requirements, and it basically states all the rules and

4    regulations.  And it gives him, under the 290 Penal Code

5    section, what he has to do either if he's moving into an area,

6    if he's updating before his birthday, and all the requirements,

7    if he goes transient from one address to -- it has various

8    types of requirements.

9    Q     And is one of those requirements that, when you move into

10   a state, you're required -- you move into the state, you're

11   required to register?

12   A     That is correct.

13   Q     And then looking at the bottom in the comments section,

14   can you read what's in that section.

15   A     Yeah.  Under comments, I made a note.  Generally, when

16   someone moves into our area, we make a note, the investigating

17   officer.  And in this specific one, it says moved into state

18   from New York, convicted of first-degree rape.

19              THE COURT:  Is that your handwriting?

20              THE WITNESS:  It is, Your Honor.

21   Q     BY MS. BAEHR-JONES:  All right.  Turning to the form

22   before that, this is the form that's dated October 17th, 2005.

23   What is this form?

24   A     This is -- this would be the same form as the form we just

25   discussed, with the exception again under the first -- the top

1   where you have the four headings, this time under type, it

2   being annual.

3   Q     And was it the defendant who came in and filled this out,

4   this form out?

5   A     It -- yes.

6   Q     And were you the registering officer there when he filled

7   this out?

8   A     I was.

9   Q     And did he fill -- and did you watch him fill -- sign this

10  form in person?

11  A     I did, as well as get a thumbprint.

12  Q     Okay.  Great.

13        And looking at the birth date, what's the date of birth on

14  this form?

15  A     10/20/64.

16  Q     And then turning to the second page of this form, which

17  would be two pages back in the exhibit binders -- I apologize.

18        When you say that this is an annual type of form, what

19  does that represent?  What does that mean?

20  A     A 290 registrant is required to register five days before

21  his birth date, and generally that is to update the form that

22  there's no changes.

23  Q     And this form was signed on what date?

24  A     On 10/17/2005.

25  Q     Okay.  Okay.  And now, finally, turning to the next form,

1    which should be the first one, do you recognize this form?

2    A    I do.

3    Q    And what's the date that this form was signed?

4    A    This one was signed 10/17/2006.

5    Q    And were you the registering officer who was present when

6    this form was signed?

7    A    I was.

8    Q    And did you watch the defendant sign it?

9    A    I did.

10   Q    And did you take his fingerprint?

11   A    I did.

12   Q    Okay.  And, again, what's the birth date that's listed on

13   this form?

14   A    10/20/64.

15   Q    And what type of form is this in terms of registering?

16   A    And this would be an annual update as well.

17   Q    I want you to turn now to Government's Exhibit 117.  Just

18   looking at the first page of this, what -- what is this?

19   A    This is a color photograph of the defendant's California

20   driver's license.

21   Q    Okay.  And what date is listed in the app date, the

22   application date?

23   A    May 9th, 2008.

24   Q    No, I apologize.  Looking -- so looking down at the --

25   starting with DOB, can you look at where it says DOB?

```
 1   A      Okay.

 2   Q      What's the --

 3   A      7 -- 7/26/2005.

 4   Q      Right.  So sorry.  For the application date, 7/26/2005.

 5          And then looking up at the date of birth, what's the date

 6   of birth on the first page of this?

 7   A      10/20/1964.

 8   Q      And who is this for?

 9   A      For Stanley Dan Reczko III.

10   Q      Okay.  And looking at the signature that's on -- that's

11   underneath the picture on this exhibit, does that signature

12   match the signature that appears on Government's Exhibit 119 on

13   the registration forms that the defendant signed in your

14   presence?

15   A      It looks similar, yes.

16   Q      And is that the same birth date as what's listed on the

17   registration forms?

18   A      It is.

19              MS. BAEHR-JONES:  Nothing further, Your Honor.

20              THE COURT:  Mr. Kaloyanides, cross-examination.

21              MR. KALOYANIDES:  Briefly, Your Honor.

22                          CROSS-EXAMINATION

23   BY MR. KALOYANIDES:

24   Q      Directing your attention to Government's 119, on page 10

25   of that exhibit, which would have been the 8/1/2005
```

UNITED STATES DISTRICT COURT

1    registration form, do you have that?

2    A    I do.

3    Q    Next to the thumbprint there, there's some handwriting to

4    the right of that.  Do you see that?

5    A    I do.

6    Q    Did you write that?

7    A    I did not.

8    Q    Do you know what that is?

9    A    That, in my opinion, looks like some type --

10   Q    Do you know?  Yes or no.  I'm not asking you to opine on

11   that.  Just if you know what it is.

12   A    No.

13   Q    Have you ever seen notations like that before?

14   A    Yes.

15   Q    And where have you seen such notations?

16   A    On LAFIS print results.

17   Q    And what is LAFIS?

18   A    It's when a result comes in for a print comparison or a

19   verification.

20   Q    So in your experience, this notation is some sort of note

21   that a comparison had been made of this print?

22   A    Yes.

23   Q    And where -- what would it be compared against?

24   A    Another print.

25   Q    What database?

```
 1   A     In various.  It depends on the state.  It depends on the
 2   investigation.  It could be done at SID.  It could be done
 3   locally.
 4   Q     Is there anything in that handwritten notation that would
 5   tell you what database this print was compared against?
 6   A     Department of Justice.
 7   Q     Is that from the DOJ notation right next to it?
 8   A     Yes.
 9   Q     And that's -- is that the California Department of
10   Justice, or was that the U.S. Department of Justice?  Can you
11   tell?
12   A     I cannot tell.
13   Q     Now, going to page 12, you indicated in the comment
14   section, that's your handwriting at the bottom of the page
15   there?
16   A     Yes.
17   Q     Where did you get that information?
18   A     That information was provided to me from the State, or the
19   officer who initially had him as a registrant, who had advised
20   me he would be moving into my jurisdiction.
21   Q     Now, when did that all occur?
22   A     An exact date?
23   Q     Approximately.
24   A     Prior to his arrival, to him registering with us.
25   Q     Did the officer identify themselves?
```

1    A     He did.

2    Q     Did he fax any official documents to you?

3    A     We had -- I don't know if they were faxed.  To the best of

4    my recollection, there was some type of paperwork mailed or

5    faxed to us.

6    Q     So you received some sort of documentation?

7    A     To the best of my recollection, we did, yes.

8    Q     And generally can you describe what that document was.

9    A     It would be a -- what we would consider a criminal rap

10   sheet, or a conviction of the offense.  I would have to have

11   that document in front of me to better describe that document.

12   It's an out-of-state document, not a document that I'm

13   accustomed to dealing with.

14   Q     Do you recall receiving -- do you recall what agency that

15   document was from?

16   A     I believe it was from some agency, and to the best of my

17   recollection, perhaps from upstate New York.  Couldn't tell you

18   the exact department.

19   Q     When you say "upstate New York," do you mean not New York

20   City?

21   A     Yes.

22   Q     So some other town in New York.  Were you -- were you

23   familiar with that?

24   A     I was not.

25   Q     Okay.  The only thing you knew, it wasn't New York City

```
 1   proper?
 2   A    Correct.  It wasn't department of -- yes.  N.Y.P.D., who
 3   I've dealt with in the past, it was not them.  A smaller
 4   agency.
 5   Q    In your capacity in registering sex offenders, had you
 6   ever registered out-of-state registrants in California?  Let
 7   me -- let me rephrase that.
 8        Had you registered, in California, people who needed to
 9   register in California because they were moving in from out of
10   state?
11   A    I have -- I have registered people who have moved into my
12   jurisdiction from another state in the past, yes.
13   Q    Had you done that prior to this registration?
14   A    I couldn't tell you if he was my first one.  I've done
15   several, yeah.
16   Q    Did you yourself ever compare the thumbprint on any of the
17   forms that Mr. Reczko filled out --
18   A    No.
19   Q    -- that he signed?
20        Did you ever do a comparison of that thumbprint?
21   A    No.
22   Q    And just to be clear, when he would come in for either the
23   annual or even on the original, the only thing he would fill
24   out is his signature, the date he signed it, and then the
25   initials on the next page; right?
```

```
 1  A    Correct.  And just for clarification purposes, when you're
 2  saying the "original," you're meaning the original into our
 3  jurisdiction, the first time I met him and he registered?
 4  Q    Well, let's go one -- one at a time.
 5       So on the August 1st, 2005, the original initial coming
 6  into the jurisdiction, you filled out all the detailed
 7  information.  He signs and dates it, and then he initials the
 8  other page?
 9  A    Correct.  And a thumbprint.
10  Q    And a thumbprint.
11       Then the -- on each of the annual update registrations,
12  again you filled out the details.  He gave the thumbprint,
13  signed, date and initialed?
14  A    Correct.
15  Q    Directing your attention to page 2 of Exhibit 119 --
16  A    And -- yes.
17  Q    -- that's the one dated 10/17/06?
18  A    Correct.
19  Q    There's a box, CII number, SID.  What is that?
20  A    That is generally a number that is given to somebody who
21  has a criminal history, a reference number.
22  Q    And where does that number come from?
23  A    That number is generated from Department of Justice.
24  Q    Is that a -- the U.S. Department of Justice or the
25  California Department of Justice?
```

```
 1   A      California.

 2   Q      So that's a California number?

 3   A      Yes.

 4   Q      Now, going back to page 10, there's that same box, CII

 5   number, SID.  It's blank, though.  Do you see that?

 6   A      I do.

 7   Q      Is there a reason it was not included on the original

 8   transferring into the jurisdiction form?

 9   A      He may not have had the CII number since he hadn't

10   registered as a 290 registrant.  One of the reasons, he was an

11   out of state, did not have a California state conviction.

12   Therefore, he didn't have perhaps a CII number.

13   Q      Did he provide you with that number, or is that a number

14   you would have had to look up?

15   A      I would look that up.

16   Q      But the only reason you would not have included it is that

17   California would not have had a number for him?

18   A      Correct.  Prior -- prior to registering a registrant, you

19   would check his criminal history.  He brings in a valid

20   driver's license, proof of residenceship [sic].  If it's local,

21   I need an address.  There's different types of papers I would

22   need, and I would be able to get that number from that, which

23   would be indicative, on the last registration, after he's

24   registered and he did the correct paperwork, is perhaps

25   probably, if he had any prior convictions, is why that CII
```

1   number was issued to him.

2          MR. KALOYANIDES:  Nothing further.  Thank you,

3   Your Honor.

4          THE COURT:  All right.  Ms. Baehr-Jones, any

5   redirect?

6          MS. BAEHR-JONES:  Nothing further, Your Honor.

7          THE COURT:  All right.  Detective Miranda, thank you

8   very much.  You may step down.

9      Does the Government have any other witnesses?

10         MS. BAEHR-JONES:  No, Your Honor.

11         THE COURT:  The Government rests --

12         MS. BAEHR-JONES:  Yes.

13         THE COURT:  -- with the admission of the exhibits

14   and pending the admission of 100?

15         MS. BAEHR-JONES:  Yes, Your Honor.

16         THE COURT:  Okay.  Mr. Kaloyanides.

17         MR. KALOYANIDES:  Defense rests.

18         THE COURT:  All right.  Maybe what we can do is

19   this:  I don't think I need you to fully argue the matter at

20   this time, but perhaps you can tell me what it is -- what's the

21   issue that the defense is raising so that, as I go through not

22   only reviewing Detective Miranda's testimony but also these

23   documents, I will have a better focus in terms of what it is.

24   And then I'll give you folks a full opportunity to argue after

25   I've had a full opportunity to review all of the evidence

1    that's in right now.

2        Mr. Kaloyanides?

3            MR. KALOYANIDES:  Briefly, Your Honor.  As I

4    mentioned, as far as Exhibit 100 goes, it doesn't add anything

5    to the record so far as the exhibits admitted.  And my very

6    brief argument is going to be that the exhibits, all the

7    exhibits taken, don't establish beyond a reasonable doubt that

8    the Government has met its burden to prove up the prior

9    conviction.

10            THE COURT:  All right.  Why don't we pick a date

11   that you folks can come back for purposes of final argument

12   sometime next week, during the week.

13       Will you folks be ready to proceed either next week or the

14   week after?

15            MS. BAEHR-JONES:  Yes, Your Honor.

16            THE COURT:  Mr. Kaloyanides?

17            MR. KALOYANIDES:  Yes, Your Honor.  It will depend

18   on the day of the week, though.

19            THE COURT:  I'll just take a look at my calendar,

20   being retrieved.  I'm proposing Wednesday, March 11.  Are you

21   folks available, let's say, at 9:30 A.M.?

22            MR. KALOYANIDES:  I am not, Your Honor.

23            THE COURT:  Are you available other days that week,

24   or are you occupied in trial that week?

25            MR. KALOYANIDES:  I might be available Thursday.

1    Wednesday I have a fairly lengthy preliminary hearing,

2    Wednesday morning in Rancho court.  I fully expect it would

3    wrap up that day.  So Thursday would be available.  I am not

4    available Friday the 13th.

5         Alternatively, I would be available Tuesday the 10th in

6    the afternoon.  And then the following week is much, much more

7    open for me.

8              THE COURT:  How long do you expect your closing

9    argument to be?

10             MS. BAEHR-JONES:  Very short, Your Honor.  Five, ten

11   minutes at most.

12             THE COURT:  Mr. Kaloyanides?

13             MR. KALOYANIDES:  Similarly.

14             THE COURT:  How about Tuesday afternoon the 10th?

15   Are you available, Ms. Baehr-Jones?

16             MS. BAEHR-JONES:  Yes, Your Honor.

17             THE COURT:  Why don't we say two o'clock.

18             MS. BAEHR-JONES:  That's fine, Your Honor.

19             MR. KALOYANIDES:  That's fine.  Thank you,

20   Your Honor.

21             THE COURT:  I'll put it at 2:00 P.M.

22             MS. BLANCH:  Your Honor, if I may.

23             THE COURT:  Yes.

24             MS. BLANCH:  I just want to let the Court know that

25   I will not be available.  There's not another day that I would

1    be available.  So Ms. Baehr-Jones will be handling it in my

2    absence.

3            THE COURT:  That's fine.

4        2:00 P.M. for final argument and the Court's decision on

5    Tuesday, March 10, 2015.

6        All right.  United States Marshal is directed to return

7    Mr. Reczko here at that time.

8        Anything further at this time, Counsel?

9            MS. BAEHR-JONES:  No, Your Honor.

10           MR. KALOYANIDES:  No.  Thank you, Your Honor.

11           THE COURT:  We'll see you on Tuesday.  Thank you

12   very much.

13           THE CLERK:  This concludes the Court's calendar.

14   This court is now adjourned.

15               (Matter adjourned at 10:53 A.M.)

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5            I, KHOWOONSUN CHONG, FEDERAL OFFICIAL REALTIME

 6   COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

 7   THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

 8   PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

 9   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13   THE UNITED STATES.

14

15                          DATED THIS 25TH DAY OF OCTOBER, 2015.

16

17

18                          /S/ KHOWOONSUN CHONG

19                          _____
                            KHOWOONSUN CHONG, CSR NO. 12907, CRR
20                          FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**